87-CR-00221-M



FILED _____ LODGED
RECEIVED
SEP 24 2008
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT WESTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA

v.

DIRK MARTIN MAYBERRY

No: CR87-221T

MOTION FOR CLARIFICATION THAT CRIMINAL CONVICTION DOES NOT EFFECT MR. MAYBERRY'S RIGHT TO VOTE

NOTE FOR HEARING OCTOBER 2, 2008

## I. INTRODUCTION

Dirk Mayberry, by and through counsel, hereby moves this court for an order to clarify that the Judgment and Commitment entered on July 18, 1988 does not affect Mr. Mayberry's right to vote. An order clarifying this point would be appropriate, because Mr. Mayberry's conviction arose from a violation of Federal statutes that do not have a counterpart under Washington Law.

## II. FACTS

A judgment was entered against Mr. Mayberry on July 18, 1988 convicting him of offenses under 18 USC 371 (conspiracy to defraud the United States) and 18 USC 1001-1002 (Aiding and Abetting a false statement to HUD). Anderson Declaration (Exhibit 1 page 1). Mr.

MOTION TO CLARIFY EFFECT OF
CRIMINAL CONVICTION

1

Jason Anderson
Law Offices Jason Anderson
8015 15th Ave NE Ste 5
Seattle, WA 98117

Mayberry has a thirteen year old daughter who is interested in politics and Mr. Mayberry would like to vote in the upcoming election. Washington law requires all applicants for voting registration to state whether they have lost their civil rights by reason of being convicted of an infamous crime. RCW 29.07.070. Mr. Mayberry seeks clarification that this conviction is not for an infamous crime under Washington law.

### III. ISSUES

1. Whether the Washington Statute Excludes Federal Crimes from the Term Infamous Crimes.
2. Whether Mr. Mayberry was Convicted of a Crime Classified as an Infamous Crime under Washington Law.

### IV. EVIDENCE

Declaration of Jason Anderson and Case File

Declaration of Dirk Mayberry

### V. AUTHORITY AND ARGUMENT

Article VI. section 3 of the Washington Constitution disqualifies from franchise, or the right to vote, "All persons convicted of infamous crimes unless restored to their civil rights." The Washington Legislature has defined "'infamous crime'" as a "crime punishable by death in the state penitentiary or imprisonment in a state correctional facility." RCW 29A.04.079. Mr. Mayberry submits that this matter may be settled by the plain language of this statute. Mr. Mayberry was convicted of a federal statute and never subject to imprisonment in a state correctional facility.

Mr. Mayberry is only aware of one case that addresses this question to any extent, *State v. Collins*, 69 Wash. 268, 124 Pac. 903 (1912). In this case, the defendant was accused of swearing a false oath when he signed a statement on his voter registration that he had not lost his civil rights due to being convicted of an infamous crime when he had previously been convicted in Missouri of breaking custody. *Id.* at 269-270. The court ultimately decided that the conviction should be overturned because the conviction in question, while possibly a felony in Missouri, was a misdemeanor in Washington. *Id.* at 272. The court limited its holding stating:

MOTION TO CLARIFY EFFECT OF CRIMINAL CONVICTION

2

Jason Anderson
Law Offices Jason Anderson
8015 15th Ave NE Ste 5
Seattle, WA 98117

> While we do not hold that the forfeiture of the elective franchise declared by the Constitution applies only to persons convicted of an infamous crime in this state, we do hold that persons who come into this state and become citizens thereof are subject to the same criminal laws as are other citizens.

*Id.* at 273. This holding does not explicitly address federal convictions. One interpretation that has been adopted by the Washington Attorney General is that a conviction only causes the forfeiture of a person's voting rights if the conduct that gave rise to the foreign conviction constitutes a crime of some sort under both the laws of this state and the laws of the other jurisdiction. See *AGO* 1971 No 7 [original page 5] (a copy is attached to this motion). The attorney expresses the opinion, which this court should adopt that federal felonies such as income tax evasion or mail fraud have no state counterpart under the Washington Code. *Id.*

In this case, the statutes in question explicitly address conduct directed to the United States of America. Specifically, 18 USC 371 read:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons to any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 USC 371. The key language in this statute is that the person in question must commit the offense against the United States. Given the separation of powers, the State of Washington cannot make actions against the United States a crime. It is impossible for Washington to have a state counterpart stating that it is a violation of Washington law for a person to conspire to commit an offense against the United States.

Similarly, the second charge, Aiding and Abetting the Making of False Statements to HUD under 18, USC 1001-1002 provided:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry,

shall be fined under this title or imprisoned not more than five years, or both.

18 USC 1001.

> Whoever, knowingly and with intent to defraud the United States, or any agency thereof, possesses any false, altered, forged, or counterfeited writing or document for the purpose of enabling another to obtain from the United States, or from any agency, officer or agent thereof, any sum of money, shall be fined under this title or imprisoned not more than five years, or both.

18 USC 1002. In both of these cases, the crime in question implicates actions taken within federal jurisdiction. In particular, in this case Mr. Mayberry was convicted of aiding and abetting false statements to HUD, a federal agency. The State of Washington does not have a counterpart statute addressing false statements to HUD.

Considering these statutes, this court should enter an order clarifying that Mr. Mayberry has not committed an infamous crime as contemplated under Washington Law that would forfeit his right to vote.

September 22, 2008

/s/ Jason Anderson
Jason Anderson WSBA #32232
Attorney for Dirk Mayberry

---

MOTION TO CLARIFY EFFECT OF
CRIMINAL CONVICTION

4

Jason Anderson
Law Offices Jason Anderson
8015 15th Ave NE Ste 5
Seattle, WA 98117



ELECTIONS -- CITIZENSHIP -- CRIMES -- RESTORATION OF CIVIL RIGHTS BY GOVERNOR

(1) A person who has been convicted of a felony under federal law, or under the law of another state, unless restored to his civil rights, should be regarded as disqualified from voting in the state of Washington under Article VI, § 3 of the state Constitution, unless the felony of which the person was convicted has a counterpart which is not a felony under the criminal laws of this state.

(2) To the extent that a person who has been convicted of a crime under federal law or under the law of another state is disqualified from voting in the state of Washington, the governor of this state has the authority to restore such person's civil rights so as to enable him to vote in this state.

- - - - - - - - - - - - - -

February 8, 1971

Honorable Daniel J. Evans
Governor of the State of Washington
Legislative Building
Olympia, Washington 98501

Cite as: AGO 1971 No. 7

Dear Sir:

By letter previously acknowledged, you have requested the opinion of this office on two questions which we paraphrase as follows:

(1) Under what circumstances is a person who has been convicted of a crime under federal law, or under the law of another state, to be regarded as being disqualified from voting in the state of Washington under Article VI, § 3 of our state Constitution?

(2) To the extent that a person who has been convicted of a crime under federal law or under the law of another state is disqualified from voting in the state of Washington in accordance with the answer to question (1), does the governor of this state have the authority to restore such person's civil rights so as to enable the person to vote in this state?

[[Orig. Op. Page 2]]

We answer question (1) in the manner set forth in our analysis, and question (2) in the affirmative.

ANALYSIS

Article VI, § 3, of our state Constitution provides:

"All idiots, insane persons, and persons convicted of infamous crime unless restored to their civil rights are excluded from the elective franchise." (Emphasis supplied.)

Question (1):

This constitutional provision has been construed by the Washington supreme court in only one case, State v. Collins, 69 Wash. 268, 124 Pac. 903 (1912). In that case, the defendant had been accused of falsely swearing, in connection with his application for registration to vote in this state, that he had never been convicted of an infamous crime.1/ Specifically, it was asserted by the prosecution that the defendant had been convicted of the crime of breaking jail in the state of Missouri.

The defendant's demurrer to the information was sustained by the trial court, and the prosecution appealed; however, the trial court's ruling was affirmed by an opinion reading, in material part:

"Section 2342 of Rem. & Bal. Code, which was enacted in 1909, reads:

"'Every prisoner confined in a prison, or being in the lawful custody of an officer or other person, who shall escape or attempt to escape from such prison or custody, by force or fraud, if he is held on a charge, conviction or sentence of a felony, shall be guilty of a felony: if held on a charge, conviction or sentence of a gross misdemeanor or [[Orig. Op. Page 3]] misdemeanor, he shall be guilty of a misdemeanor.'

"Under this section, it is plain that the escape or attempted escape, in order to constitute a felony, must be by a prisoner charged with a felony, otherwise it is merely a misdemeanor. The information is silent as to the nature of the offense with which the defendant was charged when he broke the Missouri jail. It does not state whether he was then charged with a felony or a misdemeanor under the laws either of that state or of this. It is clear that the information thus failed to state facts which under the present law of this state would necessarily constitute an infamous crime. Moreover, prior to the enactment in 1909 of § 2342, above quoted, the breaking of jail and escape therefrom by a prisoner, regardless of the nature of the charge upon which he was imprisoned, was only a misdemeanor. Code of 1881, § 884. So that, under the law of this state, as it existed when the defendant was convicted in Missouri, as alleged in the information, the offense for which he was convicted was recognized only as a misdemeanor. In order, therefore, to sustain this information, we are driven to the unreasonable position that the defendant, at the time alleged in the information, might have broken jail in this state without loss of his right to vote, but having broken jail in Missouri and lost his right to vote there (assuming that he did lose this right) he therefore lost his right to vote on subsequently becoming a resident of this state. In other words, the same offense committed in this state, being here a misdemeanor not forfeiting the right of franchise, if committed in a state where it is a felony would forfeit the right of franchise here. We have been cited to no authority according such an extraterritorial effect to a foreign law in order to sustain [[Orig. Op. Page 4]] a criminal charge under a domestic statute. While we do not hold that the forfeiture of the elective franchise declared by the Constitution applies only to persons convicted of an infamous crime within this state, we do hold that persons who come into this state and become citizens thereof are subject to the same criminal laws as are other citizens."

(pp. 271-273.)

The basic lesson which we derive from this case is that, while the disqualification contained in Article VI, § 3, supra, is not limited only to infamous crimes perpetrated against the state of Washington, neither is it inclusive of all crimes committed against the laws of another jurisdiction simply because the crime in question may be regarded as an infamous crime under the constitution or statutes of the convicting jurisdiction. Where, as in the case of the Missouri crime which was involved in Collins, the crime in question has a counterpart under the criminal laws of this state, it is not to be regarded as an "infamous crime" for the purposes of Article VI, § 3. supra. unless it would have constituted a felony2/ had the crime been committed in this state and prosecuted under its criminal laws.

However, notwithstanding certain views expressed in two [[Orig. Op. Page 5]] previous opinions of this office,3/ we do not believe that the exception which the court enunciated in Collins should be extended to the point of encompassing those federal felonies (such as income tax evasion or mail fraud) which have no state counterparts under our own criminal code. Only where the conduct which gave rise to the subject individual's foreign conviction constitutes a crime of some sort under both the laws of this state and the laws of the other jurisdiction does the logic and reasoning of the Collins decision come into play. Then, in that circumstance (said the court) the conduct in question should not be regarded as having any greater disqualifying effect upon the convicted person's right to vote in this state than it would have had if the conduct had occurred, and a conviction been obtained, within this state.

In so far as cases from other jurisdictions have been uncovered in the course of our research. we must first note that each such case appears to have turned upon the precise language of the disqualifying prohibition in the constitution or statutes of the particular state in which the subject individual was seeking to vote (or. correlatively, to hold public office). The cases are annotated in 149 A.L.R. 1075: cf., 86 A.L.R. 297. Suffice it to say that the view which we express in this opinion - namely, that an "infamous crime" under Article VI, § 3, supra, includes all felonies committed against the laws of any jurisdiction (state or federal) except those having Washington counterparts not constituting felonies under the laws of this state - appears to be consistent with the following well reasoned decisions: State ex rel. Olson v. Langer, 65 N.D. 68, 256 N.W. 377 (1934); State ex rel. Barrett v. Sartorious, 351 Mo. 1237. 175 S.W.2d 787 (1943); and Arnett v. Stumbo, 287 Ky. 433. 153 S.W.2d 889 (1941). See, also, the very recent case of State ex rel. Symonds v. Gualano, 124 Ill. App.2d 208, 260 N.E.2d 284 (1970), which, along with Arnett v. Stumbo will be further discussed below in answering your second question. The fundamental rationale for these decisions appears to be that the purpose of an electoral disqualification such as is contained in Article VI, § 3, of our Constitution, supra, is to exclude from the [[Orig. Op. Page 6]] franchise those persons convicted of crimes so serious as to demonstrate an incapacity to respect and uphold the forms and rules that bind men together in an organized society - unless (presumably on the basis of a demonstration of sufficient rehabilitation) such persons have, by act of executive clemency, been restored to their civil rights. Accordingly, it should make no difference whether this demonstration of incapacity occurred within the jurisdiction in which the individual in question now seeks to vote, or in some other jurisdiction. The seriousness of the crime. for the purposes of this approach, is to be judged on the basis of the traditional distinction between misdemeanors (ordinarily punishable only by fines and/or short periods of confinement) and felonies (ordinarily punishable by longer terms of imprisonment in a state or federal penitentiary).

We do not believe that our own State v. Collins, supra, is in any manner inconsistent with this rationale. The essence of the Collins decision, within the confines of this approach, is simply that the framers of our Constitution should not be regarded as having intended to preclude a person from voting in this state on the basis of a foreign conviction of a crime which, had it been committed in this state, would not have resulted in such a disqualification. Accordingly, Collins should be limited to its own factual pattern, and not extended as was done in the earlier opinions of this office to which we have above referred.

Question (2):

We turn next to your second question which (repeated for ease of reference) we have paraphrased as follows:

To the extent that a person who has been convicted of a crime under federal law or under the law of another state is disqualified from voting in the state of Washington in accordance with the answer to question (1), does the governor of this state have the authority to restore such person's civil rights so as to enable the person to vote in this state?

It should be borne in mind in considering this question that the disqualification for voting which results from the conviction of an infamous crime under Article VI, § 3, supra, is not derived from the laws of the United States or of another state where the conviction may have occurred; but instead it rests solely upon the Constitution of the state [[Orig. Op. Page 7]] of Washington. It is our own Constitution which states that:

"All . . . persons convicted of infamous crime unless restored to their civil rights are excluded from the elective franchise."

While it has generally been accepted that the governor of a state has no power to grant a pardon for an offense against the United States for which a conviction has been obtained in the federal courts, or for an offense against a sister state (in the sense of taking away any part of the corporal punishment inflicted upon the offender) it has been held that the governor of a state, in the exercise of his executive clemency, may effectively restore the rights of citizenship in his own state to one who has been disqualified for a public office, or who has previously lost other civil or political rights as the result of a foreign conviction. See, 39 Am.Jur., Pardon, Reprieve and Amnesty, § 24, p. 532; Arnett v. Stumbo, supra; and other cases appearing in 135 A.L.R. at p. 1488, et seq.

In Arnett v. Stumbo, supra, the defendant had been convicted in a federal court of violating a federal statute, whereupon he was sentenced to a term of imprisonment in a federal penitentiary. Upon expiration of the sentence and his release from confinement, the defendant obtained a certificate of restoration of his civil rights from the governor of the state of Kentucky - in which he had taken up residence. After receiving this certificate, the defendant filed for the office of county sheriff in Kentucky, and his eligibility to serve in this office was challenged in state court. Basically, it was contended that, since Stumbo had never received a pardon from the President of the United States for his offense, he could not be regarded as having acquired the qualification for voting and holding public office in Kentucky - in that the governor of Kentucky was, concededly, powerless to pardon Stumbo for his federal crime. However, while the Kentucky court agreed with this latter point, it held, nevertheless, that the governor of Kentucky could, in the exercise of his power of executive clemency, restore to

Stumbo those rights of citizenship in Kentucky which had been forfeited, under the Kentucky Constitution, by reason of his federal conviction.

[[Orig. Op. Page 8]]

To the same effect are State v. Haubrich, 248 Iowa 978, 83 N.W.2d 45 (1957); Hogan v. Hartwell, 242 Ala. 646, 7 So.2d 889 (1942); and the very recent case of State ex rel. Symonds v. Gualano, supra. In each of these cases, the respective state courts held that their state's governor was empowered, as an adjunct of his pardoning power under the state constitution, 4/ to restore the rights of citizenship to persons convicted of federal or foreign state crimes - in so far as those foreign convictions had resulted in a disqualification for voting or holding public office within the subject states.

Based upon these decisions, it is our opinion that in those instances where, in accordance with our answer to question (1), supra, a person who has been convicted of a crime under federal law or under the law of another state has thereby become disqualified from voting in the state of Washington under Article VI, § 3, supra, the governor of this state does possess the necessary authority to restore such person's civil rights so as to enable him to vote in this state.

We trust that the foregoing will be of assistance to you.

Very truly yours,

SLADE GORTON
Attorney General

STEPHEN C. WAY
Assistant Attorney General

*** FOOTNOTES ***

1/Cf., RCW 29.07.070, which requires all applicants for voting registration to state, inter alia, whether they have lost their civil rights by reason of being convicted of an infamous crime and, if so, whether such rights have been restored in the manner provided by law.

2/It is generally held that "all felonies are infamous crimes." Truchon v. Toomey, 116 Cal.App.2d 736, 254 P.2d 638 (1953); Otsuka v. Hite, 44 Cal.Rep. 251 (1965); Stephens v. Toomey, 51 Cal.2d 864, 338 P.2d 182 (1959). Cf., Washington Territorial Code of 1881, § 3054, providing that:

"A crime shall be deemed infamous which is punishable by death or imprisonment in the penitentiary."

Although the present statutory form of this enactment is now expressed in terms of "the state penitentiary," (see, § 29.01.080, chapter 9, Laws of 1965) we can see no basis, in view of State v. Collins, supra, for utilizing this present statutory terminology as a means of limiting the scope of Article VI, § 3, supra, to infamous crimes committed against the state of Washington.

3/See, letter dated July 24, 1942, to the prosecuting attorney of King county [[1941-42 OAG 209]], and letter dated November 8, 1962, to the state superintendent of elections, copies enclosed.

4/In Washington, this power is granted by Article III, § 9 of our state Constitution which simply states that:

> "The pardoning power shall be vested in the governor under such regulations and restrictions as may be prescribed by law."